**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

RUBEN H. NALDA, and KIMBERLY O.   )
NALDA,   )
  )
      Plaintiffs,   )
  )   C.A. No. N19C-08-140 EMD
      v.   )
  )
GREEN VALLEY HOME   )
INSPECTIONS, LLC d/b/a THE GREEN   )
VALLEY GROUP,   )
  )
      Defendant.   )

Submitted: June 1, 2021
Decided: August 24, 2021

*Upon Defendant's Motion for Summary Judgment*
***GRANTED***

Margaret M. DiBianca, Esquire, Clark Hill PLC, Wilmington, Delaware, Kevin B. Watson, Esquire, Stephen M. Wolf, Esquire, Clark Hill PLC, Philadelphia, Pennsylvania. *Attorneys for Plaintiffs Ruben H. Nalda and Kimberly O. Nalda.*

Richard D. Abrams, Esquire, Timothy H. Rohs, Esquire, Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, Wilmington, Delaware. *Attorneys for Defendant Green Valley Home Inspections, LLC d/b/a The Green Valley Group.*

**DAVIS, J.**

## I.     INTRODUCTION

This is a civil action involving contract and tort claims for property damage. Plaintiffs Ruben H. and Kimberly O. Nalda (the "Naldas") allege that Defendant Green Valley Home Inspections, LLC d/b/a The Green Valley Group ("GVG"): (i) breached a contract to inspect and test a stucco system and identify material defects and deficiencies in a material report; (ii) breached the duty of good faith and fair dealing; (iii) acted negligently by not performing its

inspections with due care; and (iv) committed fraud by misrepresenting the condition of the house.

GVG moved for summary judgment (the "Motion"). GVG contends that it is entitled to summary judgment as all the Naldas' claims are barred by applicable statute of limitations. The Naldas responded and opposed the Motion. The Court held a hearing on the Motion on June 1, 2021. At the conclusion of the hearing, the Court took the Motion under advisement.

## II.   BACKGROUND

### A. THE NALDAS HIRE GVG TO PRODUCE A PROPERTY REPORT.

On or about November 16, 2011 the Naldas entered into an agreement to purchase 4 Reese Drive, Newark, Delaware 19711 ("the Property").[1] The Property has an exterior façade that includes stucco.[2]

The Naldas' purchase of the Property was contingent upon the home passing a stucco/home inspection test by a licensed professional.[3] The Naldas hired GVG to inspect the Property and produce a report.[4]

### B. THE NALDAS PURCHASE THE PROPERTY AFTER THE 2011 GVG REPORT.

GVG produced two reports in connection with its inspection of the Property.[5] The 2011 Building Inspection Report set out that "[m]issing or improper kickout flashings were visible during the inspection. It is recommended that a qualified firm conduct a full stucco inspection."[6]

---

[1] Compl. ¶ 4.
[2] Answer. ¶ 5.
[3] Compl. ¶ 6.
[4] Answer ¶ 7.
[5] Def.'s Mot. for Summ. J. Ex. A. ("2011 Building Inspection Report"); Ex. B ("2011 Building Moisture Survey"). The plaintiffs also attached a copy of the 2011 Building Moisture Survey as Exhibit B to the Complaint and sometimes refer to it as the First Green Valley Report.
[6] 2011 Building Inspection Report at 7.

The 2011 Building Inspection Report also noted that the "basement shows evidence of moisture penetration."[7]

The 2011 Building Moisture Survey provided:

> Upon investigation that kickout flashing and resurfacing repairs have been made in the past. Small areas of elevated moisture were found along with the lack of appropriate flashing details in some areas. It is recommended that the elevated moisture areas be opened for further review and repair. All missing kickout flashing should be installed. All current kickout flashing is recommended to be replaced with appropriate flashing.[8]

The 2011 Building Moisture Survey also noted, with respect to the rear wall, that:

> **CONDITION:** It is recommended that appropriate kickout flashing be installed at the red arrows. No sheathing resistance was found when probing under the upper missing kickout. This would suggest that the sheathing is degraded. It is recommended that the stucco be opened for further review in this area. Elevated moisture ans [sic] slight delamination were found under the corner of the kitchen window. It is also recommended that this area be opened for further review and repair. Upon opening the window, the flashing and moisture barrier should be inspected for further review.
>
> **RECOMMENDATION:** Destructive Testing is recommended and further review as needed.[9]

According to the Naldas, GVG verbally told the Naldas that the stucco system was in good condition, although they did not identify any specific part of the 2011 Building Moisture Survey that characterized the Property's stucco as in good condition.[10] Relying upon the GVG reports, the Naldas purchased the Property.[11] As part of the closing agreement, the Property's sellers fixed the kickout flashings based on the 2011 Building Moisture Survey's recommendations.[12]

---

[7] *Id.* at 17.
[8] 2011 Building Moisture Survey at 4.
[9] *Id.* at 11.
[10] *See* Pls. Ruben Nalda and Kimberly Nalda's Opp. To Def.'s Mot. for Summ. J with Certif. of Serv. ("Answer. Br.") Ex. B ("Dep. of Ruben Nalda") at 54:24-55:21; Ex. F ("Hendron Report") at 178.
[11] *Id.* at 57:15-17.
[12] *Id.* at 30:15-19.

GVG recommended MAK Roofing ("MAK') to do work for the Naldas based on the 2011 Building Moisture Report.[13] MAK told the Naldas that they did not need to open the back side of the house as recommended in the 2011 Building Moisture Report.[14] Based on MAK's opinions, the Naldas hired a contractor to install kickout flashing, a ridge-vent, and additional screening to prevent bats from reentering.[15]

## C. THE NALDAS DISCOVER ISSUES WITH THE PROPERTY'S STUCCO IN 2018.

In 2018, the Naldas observed wet ceiling tiles and reached out to GVG to have them look at the Property before starting any renovation.[16] There were no water intrusion issues on the Property prior to this.[17] GVG performed an inspection and produced a 43-page Building Moisture Survey.[18] The 2018 Building Moisture Survey identified twenty-one defects in the stucco system that were not included in the 2011 Building Moisture Survey.[19]

The Naldas hired an expert, Dr. Frank Hendron, who issued a report about his opinion with respect to GVG's liability.[20] Dr. Hendron identified several GVG failures: (1) GVG confirmed that the overall stucco system was in "Good Condition"; (2) GVG failed to identify the absence of weep screeds to drain water behind the stucco; (3) GVG failed to perform testing at the bottom of the walls to evaluate the need for weep screeds; (5) GVG failed to inspect below windows on the front wall at the lower level, which were noted in the 2018 Building Moisture Report; and (6) GVG failed to test walls under doors and windows along the bottom of the wall where missing weep screeds were desirable.[21] Dr. Hendron concluded that if GVG had

---

[13] *Id.* at 23:14-24:19.
[14] *Id.* at 25:23-26:17.
[15] *Id.* at 30:2-31:17;
[16] *Id.* at 61:14-62:4.
[17] *Id.*; Answer. Br. at 4.
[18] *See* Answer. Br. Ex. F ("2018 Building Moisture Survey")
[19] *See* 2018 Building Moisture Survey 9-30; Compl. ¶ 21.
[20] Hendron Report
[21] Hendron Report at 179-180.

performed proper testing and provided the proper information about the stucco defects, the Naldas could have hired someone to perform a full forensic evaluation and made a fully informed decision on purchasing and/or repairing the Property.[22]

### D. PROCEDURAL HISTORY

On August 15, 2019, the Naldas filed their complaint seeking recovery for (i) breach of contract, (ii) breach of duty of good faith and fair dealing, (iii) negligence and (iv) fraud.[23]  GVG answered the complaint on October 10, 2019.[24]

GVG filed the Motion on December 23, 2020.[25]  The Motion argues that the applicable statute of limitations bars the Naldas' claims.  On March 29, 2021, the Naldas filed their opposition to the Motion.[26]  The Court held a hearing on the Motion on June 1, 2021.[27]   At the end of the hearing, the Court took the Motion under advisement.

### III.    PARTIES' CONTENTIONS

### A. GVG'S ARGUMENT FOR SUMMARY JUDGMENT

GVG contends that the Naldas' causes of action are subject to a three-year statute of limitations.  GVG argues that no tolling theory applies because the Naldas had inquiry notice of their claims in 2011, noting that GVG's reports specifically recommended further investigation, including opening areas of the walls with high moisture readings and deteriorated (rotten) sheathing.  As such, GVG claims that the Naldas' causes of action are barred by the statute of limitations.

---

[22] *Id.* at 180.
[23] D.I. No. 1.
[24] D.I. No. 9.
[25] D.I. No 31.
[26] D.I. No 43.
[27] D.I. No 45.

5

## B. THE NALDAS' ARGUMENT AGAINST SUMMARY JUDGMENT

The Naldas oppose the Motion and argue that the statute of limitations was tolled because (i) their injury was inherently unknowable, and (ii) the Naldas were blameless as to the wrongful act. The Naldas contend that they were not on inquiry notice until receiving GVG's 2018 report detailing systemic issues with the Property's stucco system.

## IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[28] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[29] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[30]

The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[31] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact finder.[32]

---

[28] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[29] *Id.*
[30] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[31] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[32] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

## V.     DISCUSSION

Under Delaware law, the Naldas' claims are subject to a three-year statute of limitations.[33]  "Generally, a cause of action arising in tort 'accrues' at the time the tort is committed."[34]  The Naldas contract and tort claims accrued on October 10, 2011 when Green Valley produced the 2011 Building Moisture Survey and the 2011 Building Inspection Report.[35] The claims accrued when Green Valley produced the 2011 Building Moisture Survey because the Naldas base their claims on the 2011 Building Moisture Survey.[36]  The Naldas filed their complaint on August 15, 2019.[37]  Therefore, the Naldas brought their claim more than three years after their cause of action accrued.

When the cause of action accrues outside the statute of limitations, the plaintiff bears the burden to show that a viable tolling doctrine applies.[38]  On a motion for summary judgment, however, the Court must view the evidence in the light most favorable to the non-moving party and draw all rational inferences that favor the non-moving party.[39] Therefore, the Court should grant summary judgment unless the evidence, viewed in the light most favorable to the Naldas, supports the application of a tolling doctrine.

The Naldas argue that the statute of limitations was tolled because the injury was inherently unknowable.  "Ignorance of the cause of action will not toll the statute . . . unless the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and

---

[33] *See* 10 *Del. C.* § 8106.
[34] *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004).
[35] 2011 Building Moisture Report at 2.
[36] *See, e.g.* Compl. ¶¶ 32, 36, 40, 44-45.
[37] D.I. No. 1.
[38] *See Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063 at *14 (Del. Ch. Dec. 23, 2008) ("When a complaint asserts a cause of action that on its face accrued outside the statute of limitations, however, the plaintiff has the burden of pleading facts leading to a reasonable inference that one of the tolling doctrines adopted by Delaware courts applies").
[39] *See Merrill*, 606 A.2d at 99 (Del. 1992).

the injury complained of."[40] Even if a tolling doctrine applies, however, the limitations period is only tolled until "the plaintiff was objectively aware of the facts giving rise to the wrong i.e. on inquiry notice."[41] A plaintiff is on inquiry notice when the plaintiff "discovers the facts constituting a basis for the cause of action, or knows facts sufficient to put a person of ordinary intelligence . . . on inquiry, which if pursued would lead to the discovery of such facts."[42] A plaintiff does not need actual knowledge of a wrong "but simply an objective awareness of the facts giving rise to the wrong."[43] A plaintiff is objectively aware of facts giving rise to the wrong if the "plaintiff gained 'possession of facts sufficient to make him suspicious, or ought to make him suspicious.'"[44] Once the plaintiff has inquiry notice, "no theory will toll the statute" further.[45]

The Court finds that no contested facts exist on whether the Naldas were on inquiry notice in 2011. The Naldas were aware of facts sufficient to make them suspicious of the complained of issues. The 2011 Building Inspection Report recommended a full stucco inspection by "a qualified firm."[46] The 2011 Building Moisture Report also recommended more thorough inspection including "Destructive Testing."[47] The Naldas' expert, Dr. Hendron, concluded that all the defects would have been revealed with a full forensic evaluation.[48] If the Naldas had followed GVG's recommendations for more thorough testing in 2011, they would

---

[40] *Coleman*, 854 A.2d at 842 (Del. 2004).
[41] *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008).
[42] *Silverstein v. Fischer*, 2016 WL 3020858, at *6 (Del. Super. May 18, 2016) (citing *Russum v. Russum*, 2011 WL 4731120, at *2 (Del. Super. Sept. 28, 2011) (internal citations omitted).
[43] *E.I. duPont de Nemours and Co. v. Medtronic Vascular, Inc.*, 2013 WL 261415, at *11 (Del. Super. Jan. 18, 2013).
[44] *Silverstein*, 2016 WL 302858, at *6 (Del. Super. May 18, 2016) (citing *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *6 (Del. Ch. Jan. 27, 2010)).
[45] *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007).
[46] 2011 Building Inspection Report at 7.
[47] 2011 Building Moisture Survey at 4, 11, 17.
[48] Hendron Report at 180.

have discovered the same information contained in the 2018 Building Moisture Report. Therefore, the Court finds that the Naldas were on inquiry notice of their claims in 2011. As such, the claims are time-barred

## VI. CONCLUSION

GVG identified several concerns with the Property and recommended that the Naldas perform further inspection in their 2011 Reports. The Naldas would have likely discovered the issues identified in the 2018 Building Moisture Survey if the Naldas had followed GVG's recommendations. Thus, the issues identified in the 2018 Building Moisture Survey were not unknowable nor were the Naldas blameless in not discovering the issues. Furthermore, the Naldas were on inquiry notice of their claim because they knew facts that should have led them to investigate the water moisture issues further. For these reasons and the reasons set out above, the Court **GRANTS** the Motion.

Dated: August 24, 2021
Wilmington, Delaware


*/s/ Eric M. Davis*
Eric M. Davis, Judge


cc: File&ServeXpress